PETERS, Judge ad hoc.
Samuel S. McNeely, III sued American Live Stock Insurance Company for recovery of the proceeds of an insurance contract allegedly entered into between the parties. Defendant denied coverage. Judgment was rendered in favor of defendant, dismissing plaintiff’s suit. Plaintiff has appealed. We affirm.
Plaintiff was Lessee of a thoroughbred horse, “McBarr”, leased under a written contract with its owner, Sidney Vail, of Montague, Texas. The lease began on September 14, 1968, and was to terminate on September 13, 1970. Under the terms of the lease, plaintiff was to obtain mortality insurance in the amount of $30,000.00 on the horse during the term of the lease. Accordingly, plaintiff obtained coverage on McBarr from American Live Stock Insurance Company, defendant, through the Howard C. Poor Insurance Agency in Baton Rouge on September 17, 1968. The policy was issued for a term of one year, the maximum period of time for which such policies were issued by defendant. Plaintiff failed to re-apply for insurance on the horse as of the date of expiration of the old policy, September 17, 1969, in spite of his agreement with the owner that McBarr was to be kept continually insured under the lease.
On Saturday, September 27, 1969, plaintiff called Dr. J. R. Wood, veterinarian, to examine the horse. Plaintiff testified that the horse had not eaten well that morning. Dr. Wood examined McBarr about 9:30 a. m. and made a diagnosis of “mild impaction”, or constipation, and treated him accordingly. Dr. Wood wormed another horse at the Wesley place where McBarr was located, and returned to his office in Baton Rouge. Around 11:00 o’clock á. m. plaintiff drove to the office of Mr. Howard C. Poor in Baton Rouge, and applied for insurance on McBarr. Mr. Poor gave plaintiff one of defendant’s applications of insurance for the horse. Among other things, the application required that a certificate contained therein be signed by a veterinarian attesting to the soundness and good health of the animal. Plaintiff then drove to the office of Dr. Wood to obtain his signature on the certificate. *532 Notwithstanding the fact that he had treated the animal only hours before, Dr. Wood signed the certificate, certifying that Mc-Barr was sound and in good health and that the doctor knew of no record of illness of the horse in the past twelve months. Dr. Wood signed the certificate about noon. Plaintiff then immediately returned to Mr. Poor’s office and presented to him the application for insurance containing the completed certificate signed by Dr. Wood. The certificate was placed in the mail by Mr. Poor, addressed to defendant in Geneva, Illinois, around 8:00 P.M. that evening.
Plaintiff returned to the Wesley place that afternoon and called Dr. Claude L. Stevenson to treat the animal. Dr. Stevenson began treating the horse around 5:00 o’clock p. m. He administered to the animal constantly throughout the evening and night of September 27, 1969, and into the morning of September 28, 1969, when McBarr died. An autopsy performed by the State Diagnostic Laboratory determined that death was caused by an intus-susception of the sternal flexure of the colon, (locked bowels).
Plaintiff notified Mr. Poor of the horse’s death that same morning. On Monday, September 29, 1969, Mr. Poor called Mr. Byers, a representative of the defendant company, and advised him of McBarr’s death. The application for insurance arrived at defendant’s office the following day, Tuesday, September 30, 1969, and coverage was not accepted by the defendant.
"filis controversy centers around the question of whether there was ever a contract of insurance entered into between the parties. Plaintiff contends that Poor was an agent of defendant; that his action of taking and mailing the certificate was sufficient to bind defendant and entitle plaintiff to coverage. Defendant contends that Poor was merely a broker, not an agent, and therefore vdthout authority to act for defendant and to bind defendant to coverage.
The trial judge was of the opinion that it was unnecessary to decide the status of Mr. Poor as agent or broker of defendant in view of the misstatement in the application that the horse was of sound health, which statement tended to materially affect the assumption of risk or hazard with which defendant was being requested to assume. We agree with the reasoning of the trial court.
Mr. Poor testified that he had no authority to write insurance on an animal for defendant. He testified that when an application was presented to him, he would send the same to defendant company for final determination as to whether or not to accept coverage. He testified that it was his opinion that coverage was effective as of the date he placed the application in the mail, but only if the defendant company decided to issue coverage on the animal. It was also his opinion that the determination by defendant to issue coverage would depend greatly upon the facts presented in the application for insurance, with the company relying upon the truth and veracity of the statements contained therein. He stated that an essential requirement for obtaining mortality insurance on an animal with defendant was a properly executed certificate from a veterinarian contained in the application.
The application given to plaintiff and signed by Dr. Wood contained the following certificate:
“I hereby certify that I have this day examined the afore mentioned animal (s).
'T have witnessed locomotion and observed no defects or unsoundness of limb.
“I know of no record of illness in the past twelve months.
“I know of no record or indication of sterility, past or present.
“I would consider the animal (s) sound and normal and every other respect.”
*533 There was also contained in the application another certificate signed by plaintiff which read as follows:
“In making application for this insurance I declare the above facts confirm my knowledge and also that this insurance has not been refused elsewhere, no other insurance is in effect, or that insurance is in excess of fair market value or recent appraisal, private or public.”
Dr. Wood was of the opinion that Mc-Barr was suffering from an impaction when he examined him on the morning of September 27, 1969. He testified that in his opinion impaction was not a serious illness and this was the reason he signed the certificate when it was presented to him by plaintiff. He felt that an intussusception at the sternal flexure of the colon is inconsistent with mild impaction because the latter causes a slowing down of the motility of the gut and intussusception supposedly is caused from hypo-motility of the gut.
Dr. Stevenson testified that little is known in veterinary medicine about the cause of an intussusception in a horse. He testified the intussusception occurs when there is a telescoping bowel; i. e., one part of the bowel goes inside the other bowel, cutting off circulation, and causing the animal to die from indotoxic shock. He stated that when he examined McBarr he diagnosed the animal as suffering from impaction. His treatment of McBarr was similar to the treatment given by Dr. Wood. He testified that he did not learn that the animal was suffering from an in-tussusception until after the autopsy was performed.
Dr. Stevenson is of the opinion that impaction is normally not a serious illness. However, in response to a hypothetical question presented by the court, he testified that he would not have signed an insurance certificate such as that presented to Dr. Wood if he had treated the animal at 9:30 one morning and was asked to sign the certificate some four or five hours later. He testified that he would have first ascertained whether the horse had fully recovered from the impaction before signing the certificate.
It is obvious that significant importance would be placed on the verterinarian certificate by defendant in its determination as to whether or not to extend coverage on the animal, especially in view of the amount of coverage being sought. It also seems obvious to this court that plaintiff was aware, or should have been aware, of the importance of providing defendant with all the available facts concerning the health and soundness of McBarr, in order that defendant could make a proper, objective determination as to the insurability of the animal. Regardless of the degree of seriousness normally attached to a horse suffering from impaction, the evidence readily discloses that McBarr was indeed ill on the morning of September 27, 1969. It is also evident from the record that this material fact was withheld by the plaintiff from either Mr. Poor or the defendant. Any good faith on plaintiff’s part was vitiated by his hasty attempt to obtain insurance on the animal immediately upon learning of its illness. As noted by the trial court, this is a case where plaintiff simply forgot or neglected to re-apply for insurance on the animal until poignantly reminded by the animal’s sickness to do so.
Had Dr. Wood signed the certificate and additionally noted thereon his treatment of McBarr only hours previously, and had Mr. Poor then informed plaintiff that coverage was available on the animal, then this court could possibly be presented with a legitimate question as to whether or not Mr. Poor could have thereby bound defendant. We are of the opinion, however, that a contract of insurance was never entered into between the parties. It was therefore unnecessary for defendant to allege fraud in obtaining the insurance contract. Defendant was presented with an application of insurance which on its face bore a misstatement of fact that went to the very essence of determining the insura-bility of the animal. When defendant *534 learned of the true medical facts concerning McBarr it prudently and justifiably declined coverage.
For the above reasons, the judgment of the trial court is affirmed at Appellant’s cost.
Affirmed.